UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| KEVIN G. CONROY and | ) | No. 05 B 26056 |
| RHEA JAN CONROY, | ) | |
| | ) | |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| O'HARE MIDWAY LIMOUSINE SERVICE, | ) | |
| INC.; and O' HARE MIDWAY LIMOUSINE | ) | |
| SERVICE, INC. #3, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | No. 05 A 2058 |
| | ) | |
| KEVIN G. CONROY, | ) | |
| | ) | |
| Defendant. | ) | Judge Goldgar |

## MEMORANDUM OPINION

Before the court for ruling in this chapter 7 bankruptcy is the motion of plaintiffs O'Hare Midway Limousine Service, Inc. and O'Hare Midway Limousine Service, Inc. #3 ("O'Hare" and "O'Hare No. 3," respectively) to dismiss debtor Kevin G. Conroy's counterclaim to their adversary complaint. The plaintiffs also move to strike a paragraph of Conroy's counterclaim as "scandalous." The motion to dismiss will be granted – not for the reasons the plaintiffs offer, but because Conroy lacks standing to assert his counterclaim. The motion to strike will be denied.

### 1. Background

According to the complaint, O'Hare is in the business of providing limousine transportation. O'Hare No. 3 is O'Hare's group travel, bus, and van division. Conroy was the

manager of O'Hare No. 3 under an employment agreement with O'Hare and was responsible for the daily operations of O'Hare No. 3. Although the allegations are less than clear, the claim seems to be that in violation of his employment agreement Conroy owned and operated a competing business. He used the plaintiffs' vehicles to service the plaintiffs' customers, but he made off with the money. The plaintiffs object to Conroy's discharge under section 727(a)(3) of the Code, 11 U.S.C. § 727(a)(3), on the ground that he either destroyed or failed to maintain records of his business. They also claim he owes them a debt nondischargeable under sections 523(a)(4) and (6), 11 U.S.C. §§ 523(a)(4), (6)

In his counterclaim, Conroy gives a different version of events. He alleges that in 2003 he and O'Hare decided to start a luxury bus division of O'Hare as a joint venture. The joint venture was O'Hare No. 3. O'Hare and Conroy accordingly entered into two agreements, an employment and profit-sharing agreement, and an agreement requiring O'Hare and Conroy to make capital contributions to O'Hare No. 3. O'Hare No. 3 also entered into a master vehicle leasing agreement with Conroy's business under which O'Hare No. 3 would use Conroy's buses until O'Hare No. 3 could acquire its own. Conroy began his employment with O'Hare No. 3 on January 5, 2004.

The joint venture operated for 18 months, during which time Conroy says he did everything the various agreements required of him. In May 2005, however, O'Hare's attorney suddenly told Conroy to resign and threatened "serious consequences," including the initiation of criminal charges against him, if he did not. On May 12, 2005, Conroy therefore resigned. This forced resignation was allegedly a breach of the joint venture agreement, and according to Conroy O'Hare also breached the agreements in other ways. For the various breaches, Conroy requests damages in excess of $50,000.

-2-

Conroy and his wife filed their joint chapter 7 bankruptcy petition on June 30, 2005. In his bankruptcy schedules, Conroy did not list the claim he now asserts in his counterclaim: on schedule B, in response to the question about "other contingent and unliquidated claims," he checked "none." In August 2005, the chapter 7 trustee filed a no-asset report.

## 2. Discussion

The plaintiffs supply various reasons to dismiss Conroy's counterclaim, but there is no reason to address them. The court will instead dismiss the counterclaim for lack of standing. The breach of contract claim Conroy alleges in his counterclaim is property of the bankruptcy estate. Only the chapter 7 trustee has standing to assert that claim.

The filing of a bankruptcy petition creates an estate consisting of the debtor's property. 11 U.S.C. § 541(a). The Code's definition of the estate is "broad," *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 (1983), encompassing "all legal or equitable interests of the debtor in property," 11 U.S.C. § 541(a)(1). Under this definition, "virtually all property of the debtor" becomes property of the bankruptcy estate. *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993). Included in property of the estate are claims and causes of action belonging to the debtor. *Whiting Pools*, 462 U.S. at 205 n.9; *Polis v. Getaways, Inc. (In re Polis)*, 217 F.3d 899, 901 (7th Cir. 2000); *Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 472-73 (7th Cir. 1999).

Whether the debtor has a claim or cause of action in the first place, however, depends on state law, not federal law. "Property interests are created and defined by state law," and in the bankruptcy laws "Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Butner v. United States*, 440 U.S. 48, 54-55 (1979). Unless some federal interest dictates otherwise, state law determines a debtor's property interests in

-3-

bankruptcy. *Barnhill v. Johnson*, 503 U.S. 393, 398 (1992); *Butner*, 440 U.S. at 54-56; *In re Krueger*, 192 F.3d 733, 737 (7th Cir. 1999); *Fisher v. Apostolou*, 155 F.3d 876, 880 (7th Cir. 1998).

Section 541(a)(1) also places a temporal limit on which interests become part of the estate. The estate includes only those interests the debtor held "as of the commencement of the case." 11 U.S.C. § 541(a)(1). This is as true for causes of action as anything else. A cause of action that has accrued when the bankruptcy case is commenced is estate property; only the trustee can pursue it. *Biesek v. Soo Line R.R.*, 440 F.3d 410, 413-14 (7th Cir. 2006); *Polis*, 217 F.3d at 902. A cause of action that accrues after the case is commenced, on the other hand, is the debtor's to pursue for himself. *Witko v. Menotte (In re Witko)*, 374 F.3d 1040, 1043-44 (11th Cir. 2004). Whether a cause of action has accrued again is a matter of state law. *See Butner*, 440 U.S. at 54-55.

Employing this analysis, the claim in Conroy's counterclaim belongs to the estate. The claim is a breach of contract claim, a cause of action that Illinois state law obviously recognizes. Under Illinois law, however, a claim for breach of contract accrues at the time of the breach. *Indiana Ins. Co. v. Machon & Machon, Inc.*, 324 Ill. App. 3d 300, 303, 753 N.E.2d 442, 445 (1st Dist. 2001). According to Conroy, the breach occurred when he was forced to resign from O'Hare No. 3 on May 12, 2005. At the latest, then, Conroy's claim arose on May 12, more than a month before he filed bankruptcy. Because the claim arose pre-petition, the claim is estate property, and only the trustee can prosecute it. Conroy cannot. *See Cable*, 200 F.3d at 472 (stating that "[i]n liquidation proceedings, *only* the trustee has standing to prosecute or defend a claim belonging to the estate") (emphasis in original).

Of course, a debtor can pursue a pre-petition claim if the claim has been abandoned.

-4-

*Williams v. United Techs. Carrier Corp.*, 310 F. Supp. 2d 1002, 1010 (S.D. Ind. 2004). But the trustee has not abandoned Conroy's claim. Property is deemed abandoned if the trustee affirmatively abandons it, if the court orders the trustee to abandon it, or if the property is not administered at the time the case is closed. 11 U.S.C. §§ 554(a)-(c). In this case, the court has not ordered the trustee to abandon the claim, the case is not closed, and the trustee has not affirmatively abandoned the claim. (Decisions to the contrary notwithstanding, the filing of a no-asset report does not indicate abandonment. *See Glucona Am., Inc. v. Ardisson (In re Ardisson)*, 272 B.R. 346, 351 n.1 (Bankr. N.D. Ill. 2001).) Because Conroy failed to schedule the breach of contract claim, it could not be abandoned. *See Williams*, 310 F. Supp. 2d at 1010.

Had the trustee abandoned the claim, moreover, the counterclaim would have to be dismissed in any event for lack of jurisdiction. Bankruptcy jurisdiction extends only to claims that "arise under" title 11 or that "arise in" or are "related to" a case under title 11. 28 U.S.C. §§ 1334(a), (b). Conroy's claim does not arise under title 11 because it is a state law claim. It does not arise in a case under title 11 because it does not concern "'administrative matters' that arise *only* in bankruptcy cases." *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987) (emphasis in original) (internal quotation omitted). And once abandoned, the claim could not be "related" to a case under title 11 because it could no longer "affect[ ] the amount of property for distribution . . . or the allocation of property among creditors." *In re Fedpak Sys., Inc.*, 80 F.3d 207, 213-14 (7th Cir. 1996) (internal quotation omitted). Abandonment would allow Conroy to pursue the claim himself, but he would have to pursue it elsewhere.

Because the claim in Conroy's counterclaim is property of his bankruptcy estate, Conroy lacks standing to pursue it. The counterclaim must be dismissed.

That leaves the plaintiffs' motion to strike paragraph 21 of Conroy's counterclaim. With

the counterclaim dismissed, the motion to strike part of it is moot. Because paragraph 22 of Conroy's answer contains a similar allegation, however, and to avoid the need for more motion practice on the subject, the court will construe the motion as a request to strike paragraph 22 of the answer. In paragraph 22, Conroy alleges that O'Hare procured his resignation letter by having its counsel threaten him with criminal prosecution if he did not resign. That threat, Conroy insists, violated Rule 1.2(e) of the Illinois Rules of Professional Responsibility. The plaintiffs maintain that under Rule 12(f) of the Federal Rules of Civil Procedure these are "patently false and inherently scandalous" allegations with "no bearing on the resolution of the case" and should be stricken.

Rule 12(f) permits the court, on motion, to strike from any pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) (made applicable by Fed. R. Bankr. P. 7012(b)). Motions of this kind, however, are disfavored. *Davis v. Ruby Foods, Inc.*, 269 F.3d 818, 821 (7th Cir. 2001); *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). Allegations may be stricken as "scandalous" only if they "bear[ ]no possible relation to the controversy or may cause the objecting party prejudice." *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664 (7th Cir. 1992). The moving party bears the burden of showing that the supposedly offending material must be stricken. *Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs.*, 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998).

The plaintiffs have not met their burden. The resignation letter is hardly extraneous. The plaintiffs themselves attach the letter as an exhibit to their complaint and allege that at the time of his resignation Conroy admitted to certain misdeeds. The plaintiffs plainly intend the letter to buttress their allegation that Conroy was guilty of wrongdoing: why else would he have resigned? Conroy's response in his answer – that the letter was obtained with threats of criminal

-6-

prosecution – tends to explain away the letter and diminish its impact. The allegation is therefore not only related to the controversy but directly related. As for prejudice, the plaintiffs have not claimed that the allegation has caused them any particular prejudice, and it is hard to see how it could.

The motion to strike paragraph 22 will be denied.

### 3. Conclusion

For the foregoing reasons, the motion of plaintiffs O'Hare Midway Limousine Service, Inc. and O'Hare Midway Limousine Service, Inc. #3 to dismiss the counterclaim is granted. The plaintiffs' motion to strike paragraph 21 of the counterclaim is construed as a motion to strike paragraph 22 of the answer and as such is denied. A separate order will be entered in accordance with this opinion.

Dated: April 17, 2006

_____
A. Benjamin Goldgar
United States Bankruptcy Judge

-7-